DECISION AND JUDGMENT ENTRY
{¶ 1} In this appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, we are asked to determine whether the trial court erred in terminating the parental rights of appellant, Jason S., and awarding permanent custody of his two sons to Lucas County Children Services ("LCCS").
 {¶ 2} On September 23, 2003, LCCS filed a complaint in dependency and neglect and a motion for a shelter care hearing. The agency sought temporary custody of Jason L.S., born May 29, 1997, and Jacob S., born June 19, 2003. At the time that LCCS filed its complaint and motion, both children were already in the custody of LCCS. However, adjudication and disposition of the original complaint was not completed within 90 days and that case was therefore dismissed by operation of law. See R.C.2151.35(B)(1). The agency was therefore required to re-file its complaint.
 {¶ 3} In the September 23, 2003 complaint, LCCS alleged that the children's parents were divorced and that the mother, Brandi S., moved to Mississippi, leaving her sons in the care of their father. According to the complaint, appellant, who has a history of substance abuse and the use of illegal drugs, agreed, on May 22, 2003, to place the children in the temporary care of LCCS. The complaint further alleged that appellant failed to engage in agreed upon substance abuse treatment and, despite the fact that LCCS offered him weekly visits, he visited his children only every three weeks or so.
 {¶ 4} The complaint further asserted that the children's mother maintained contact with her children through telephone calls. Nevertheless, despite the fact that Brandi agreed, on several occasions, to return to Lucas County, Ohio, in order to take custody of her children, she failed to appear even when LCCS offered to pay for her hotel room.
 {¶ 5} The motion for temporary shelter care was granted by the trial court. LCCS formulated case plans for both parents. As relative to this appeal, appellant's case plan required that he engage in substance abuse treatment and provide the results of drug screens to the agency. Noting that appellant had no suitable housing for Jason and Jacob and furnished several different addresses to LCCS, the plan stated that appellant needed to "establish independent housing to ensure the safety and well-being of the children." The third area addressed by appellant's case plan was his lack of income. Thus, appellant was supposed to actively search for a job and complete job applications. If appellant was able to obtain employment, he was then required to show pay stubs to his caseworker to verify his income. In addition, pursuant to his case plan, appellant was supposed to meet with his caseworker on a monthly basis.
 {¶ 6} On December 9, 2003, the trial court entered a judgment finding that Jason and Jacob were dependent and neglected children and awarding temporary custody to LCCS. LCCS filed its motion seeking permanent custody of Jason and Jacob on February 22, 2005. At the July 1, 2005 hearing held on LCCS's motion, the following pertinent evidence was adduced.
 {¶ 7} According to Erin Morgan, the LCCS caseworker assigned to this cause, LCCS attempted to reunite Brandi with her sons throughout the proceedings below. However, despite the fact that this mother complied with all aspects of the case plan formulated by LCCS, she never returned to Lucas County. The last reunification date for the children and their mother was set for July 28, 2004. At that time, LCCS purchased airline tickets for a flight to Mississippi for Morgan, Jason, and Jacob. On July 27, 2004, Brandi telephoned and told the agency that the state of her finances precluded her from taking her children. After that point, and not withstanding the efforts of LCCS to keep in contact with her, Brandi did not avail herself of any of the services offered by the agency and did not communicate, in any manner, with Jason and Jacob. As of July 1, 2005, the date of the dispositional hearing, the children had not seen their mother for three years.
 {¶ 8} Morgan also provided testimony concerning appellant's compliance with his case plan. Appellant completed a substance abuse assessment and was referred to an intensive outpatient treatment program. Nonetheless, he never participated in the program. As part of his treatment, appellant was required to undergo drug-testing screens. On May 8, 2003 and November 5, 2003, appellant's screens tested positive for cocaine. On October 24, 2003, appellant had a negative screen. He was a "no show" for three other drug screening tests. Morgan testified that "no shows" are considered positive drug screens.
 {¶ 9} Even though Morgan indicated that she knew that appellant had at least two jobs after his children were placed in the temporary custody of LCCS, she was unsure of his employment record because he failed to have the prescribed monthly contact with her. Moreover, appellant never acquired stable housing as mandated by his case plan. Appellant's last visit with his sons occurred on November 5, 2003. It is undisputed that appellant was incarcerated on January 29, 2004, and was to be released on July 8, 2005.
 {¶ 10} Appellant also testified at the permanent custody hearing. He admitted that on the same day of the dispositional hearing, he was being arraigned on a felony charge of forgery. Appellant also admitted that he agreed to place his children in the temporary custody of LCCS in May 2003. Even though appellant did not deny that he failed to comply with his case plan and take advantage of the services offered by LCCS, he claimed that his participation in an illiteracy program and a drug counseling program while he was incarcerated satisfied the requirements of his case plan. The trial court allowed appellant to file certificates showing that he did participate and complete these programs.
 {¶ 11} The children's guardian ad litem testified at the dispositional hearing. She stated that Jason and Jacob needed stability in their lives. The children told the guardian that they do not remember their mother and, when asked to send her children a photograph of herself, Brandi declined to do so. The guardian ad litem also testified that both children did not want to live with their mother or to live with their father. She recommended that it would be in the best interest of Jason and Jacob to award permanent custody to LCCS.
 {¶ 12} On August 16, 2005, the juvenile court entered a judgment terminating the parental rights of appellant and Brandi S. and awarding permanent custody of their minor children to LCCS. In that judgment, the court below first observed that, although served, Brandi failed to appear at the hearing. The court held that notwithstanding reasonable case planning and diligent efforts on the part of LCCS, appellant and Brandi S. failed "continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home." To support this finding, the court below held that the following conditions existed: (1) both parents exhibited a lack of commitment to their children; (2) both parents abandoned their sons; and (3) both parents failed to provide an adequate home for the children.
 {¶ 13} The judge also found that appellant "has been incarcerated since January 2004, to complete an 18 month sentence at ODRC. He is scheduled for release in July 2005, but then faces an additional four year sentence upon his release." Based upon this factual finding, the court concluded that a fourth condition applied to appellant, explicitly, that appellant was "incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child [sic] and will not be able to care for the child [sic] for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing." Finally, the juvenile court determined that it was in the best interest of the children to terminate appellant and Brandi's parental rights and award permanent custody of their minor children to LCCS.
 {¶ 14} Appellant appeals the trial court's judgment and asserts the following assignments of error:
 {¶ 15} "Father substantially completed his case plan, testified as to his plan for housing and employment, maintained contact with his case worker and had an upcoming release date from incarceration [sic] thus the trial court's finding under O.R.C. 2151.414(B), in consideration of O.R.C. 2151.414(E) sections (1), (4), (10) and (12), and that the children could not/or should not be placed with Father within a reasonable time was contrary to the manifest weight of the evidence"
 {¶ 16} "The trial court's finding of fact that father Jason [S.] was going to be incarcerated for a time certain and therefore would not be able to care for the minor children was incorrect and contrary to record."
 {¶ 17} "Father had a right to his own case plan from the date Lucas County Children Services Board decided reunification with mother was not possible, that being December 2004."
 {¶ 18} Because they are related to the same subject matter, appellant's first and second assignments of error shall be considered together. In his first assignment of error, appellant contends that the trial court's judgment is against the manifest weight of the evidence because evidence adduced at the dispositional hearing demonstrated that: (1) he substantially remedied the conditions that initially caused his children to be removed from his care; (2) he showed commitment toward his children because he communicated with them when he was able to do so and kept in contact with his caseworker; (3) he did not abandon his children; and (4) although incarcerated at the time of the dispositional hearing, he would be available to care for his children within 18 months of that hearing. In his second assignment of error, appellant argues that the trial court erred in finding that he was incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of his children and would not be able to care for his children for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
 {¶ 19} Parents have a paramount right to raise their own children. In re: C.W., 104 Ohio St.3d 163, 2004-Ohio-6411, at ¶23 (Citation omitted.). Therefore, the law must provide them with every allowable procedural and substantive right. In re Hayes,79 Ohio St.3d 46, at 48, quoting In re Smith (1991),77 Ohio App.3d 1, 16. As a result, before a juvenile court can terminate parental rights and award permanent custody of a child to a public or private children services agency, it must find that clear and convincing evidence supports both portions of the permanent custody test set forth in R.C. 2151.414(B).
 {¶ 20} Specifically, the juvenile court must find that clear and convincing evidence establishes that one of the following requisites exists: (1) the child is not abandoned or orphaned or has not been in the temporary custody of one or more public services agencies or private child placing agencies for 12 or more months of a consecutive 22 month period, ending on or after March 18, 1999, and that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with his or her parents, R.C. 2151.414(B)(1)(a); (2) the child is abandoned, R.C. 2151.414(B)(1)(b); (3) the child is orphaned and has no relatives who are able to take permanent custody, R.C. 2151.414(B)(1)(c); or (4) the child was in the temporary custody of one or more public services agencies or private child placing agencies for 12 or more months of a consecutive 22 month period, ending on or after March 18, 1999. R.C. 2151.414(B)(1)(d).
 {¶ 21} The juvenile court must also find that clear and convincing evidence shows that permanent custody is in the best interest of the child, pursuant to the factors set forth in R.C.2151.414(D).[1] In re William S. (1996),75 Ohio St.3d 95, 99. Clear and convincing evidence is that evidence which will cause the trier of fact to develop a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 22} In the present case, the trial court held that, under R.C. 2151.414(B)(1), Jason and Jacob could not be placed with either of their parents within a reasonable time or should not be placed with either parent. A juvenile court may only make this finding if clear and convincing evidence offered at the permanent custody hearing establishes that one of the sixteen conditions listed in R.C. 2151.414(E) exists. R.C. 2151.414(E); In reMatthew R.A., 6th Dist. Nos. L-04-1088, L-04-1104, 2004-Ohio-6470, at ¶ 21. The court below predicated its finding upon the alleged existence of the following conditions:
 {¶ 23} "(1) following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 24} "* * *
 {¶ 25} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 26} "(10) The parent has abandoned the child.
 {¶ 27} "* * *
 {¶ 28} "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing."
 {¶ 29} Here, clear and convincing evidence, as set forth above, showed that despite the agency's reasonable case planning and diligent efforts to assist appellant to remedy the problems that initially caused Jason and Jacob to be placed outside the home, appellant failed continuously and repeatedly to substantially remedy those conditions. In particular, appellant failed to engage in the offered substance abuse treatment, continued using cocaine, declined to seek stable housing or employment, failed to meet with his caseworker on a monthly basis, and was, within months after allowing LCCS to take temporary custody of his sons, incarcerated for committing a criminal offense. The fact that appellant completed an illiteracy course and participated in a drug abuse program while incarcerated is commendable but is insufficient evidence to establish that appellant substantially remedied the circumstances that initially caused his children to be placed in the temporary custody of LCCS. Resultantly, a finding that Jason and Jacob could not be placed with their father within a reasonable time or should not be placed with their father was supported by clear and convincing evidence. Therefore, appellant's first assignment of error is found not well-taken.
 {¶ 30} Furthermore, because one of the enumerated conditions existed, it was unnecessary for the juvenile court to address any of the other 15 conditions listed in R.C. 2151.414(E) as they related to appellant. R.C. 2151.414(E); In re Wingo,143 Ohio App.3d 652, 659, 2001-Ohio-2477. Consequently, the error of fact made by the trial court in finding that appellant would be incarcerated for four more years and would not be available to care for Jason and Jacob for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing was harmless error. In re Nibert, 4th Dist. No. 03CA19,2004-Ohio-429, at ¶ 29. Accordingly, appellant's second assignment of error is found not well-taken.
 {¶ 31} Appellant's third assignment or error argues that he had a right to his own case plan from the time that LCCS decided that reunification with Brandi S. was no longer possible. Appellant cites to In the Matter of Cunningham, 4th Dist. No. 03CA26. 2004-Ohio-787, to support this argument.
 {¶ 32} In Cunningham, the public children services agency based its motion for permanent custody of the Cunningham children on R.C. 2151.414(B)(1)(d), which requires a children services agency to file such a motion if a child has been in the temporary custody of the agency for 12 or more months of a consecutive 22 month period ending on or after March 18, 1999. Id. at ¶ 17. In such a case, a juvenile court need not find that a child cannot be placed with a parent within a reasonable time or should not be placed with a parent. Id. The only consideration in that kind of case is whether clear and convincing evidence demonstrates that the best interest of a child would be served by an award of permanent custody. Id. In Cunningham, both the juvenile court and the Fourth District Court of Appeals determined that granting permanent custody of the Cunningham children to the public children services agency would not serve their best interest. Id. at ¶ 21. Thus, Cunningham can be distinguished from this cause because the trial court's decision is based upon a finding that Jason and Jacob could not be placed with either of their parents within a reasonable time or should not be placed with either of their parents in addition to a determination of the children's best interest.
 {¶ 33} Moreover, although appellant's and Brandi's case plans are encompassed in a single document, the objectives, concerns, and services involving each parent are set forth separately. It is clear from reading appellant's case plan that LCCS did not only consider reunification of the children with their mother, but also with their father, the parent who agreed to the temporary custody, if necessary. Accordingly, appellant's third assignment of error is found not well-taken.
 {¶ 34} On consideration whereof, this court finds that clear and convincing evidence supports the termination of appellant's parental rights and award of permanent custody to LCCS. The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Pietrykowski, J. Singer, P.J. concur.
[1] Appellant does not assert that the trial court's finding that it was in the best interest of Jason and Jacob to award permanent custody to LCCS is not supported by clear and convincing evidence. Thus, we shall not address this issue.