OPINION
{¶ 1} Appellant, Jody Capasso (hereinafter "Jody"), appeals the judgment of the Hancock County Court of Common Pleas, granting permanent custody of her four children to the Hancock County Children's Protective Services Unit and terminating her parental rights.
 {¶ 2} Joseph and Jody Capasso are the parents of four children: Carol, born July 11, 1995, Joseph (Joey), born October 18, 1996, Jennifer, born June 19, 1999, and Michelle, born August 21, 2001. Since 1998, the Hancock County Job and Family Services Children's Protective Services Unit (hereinafter "CPSU") has been involved with the family and providing services to them. On May 29, 2003, the four children were removed from the Capasso home due to physical abuse allegations, lack of supervision and concerns that the children were being inadequately fed, clothed and bathed. The children were placed in temporary custody with CPSU.
 {¶ 3} On July 24, 2003, Carol, Joey and Jennifer were adjudicated to be abused, neglected and dependent children and Michelle was found to be a neglected and dependent child. Following a dispositional hearing on August 28, 2003, the trial court determined that all four children should remain in the temporary custody of CPSU.
 {¶ 4} On April 23, 2004, CPSU filed a motion for permanent custody of the four children alleging that it was in the children's best interest and that the children could not or should not be placed with either parent. A hearing on the motion was held on July 15 and 16, 2004. On July 26, 2004, the trial court granted the motion of CPSU and terminated the parental rights of Jody and Joseph Capasso.
 {¶ 5} Jody appeals this decision and sets forth one assignment of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court erred in granting the motion of the Hancock County Joband Family Services: Children's Protective Services Unit and in placingthe children in the permanent custody of the Hancock County Job andFamily Services: Children's Protective Services Unit, as the Court'sdecision was not supported by clear and convincing evidence and isagainst the manifest weight of the evidence.
 {¶ 6} It is a firmly established principal of law that a parent has a fundamental right to care for and have custody of his or her child. In reShaeffer Children (1993), 85 Ohio App.3d 683; citing Santosky v.Kramer (1982), 455 U.S. 745, 753. The United States Supreme Court has stated, "It is cardinal with us that the custody, care and nurture of the child reside first in the parents." Stanley v. Illinois (1972),405 U.S. 645, 651; citation omitted. Therefore, the termination of parental rights is an alternative of last resort. See In re Wise (1994),96 Ohio App.3d 619.
 {¶ 7} Ohio law provides that before a juvenile court can terminate parental rights and award permanent custody of a child to an agency of the state when the child is neither abandoned nor orphaned and who has not been in the temporary custody of an agency for twelve or more months, the court must find by clear and convincing evidence that, (1) the grant of permanent custody to the agency is in the best interest of the child, and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414. Clear and convincing evidence is that evidence which creates a firm belief as to the facts sought to be established. In re Rodgers (2000),138 Ohio App.3d 510, 519, citing Cross v. Ledford (1954),161 Ohio St. 469.
 {¶ 8} Jody alleges herein that the trial court erred in granting permanent custody to CPSU because CPSU did not show by clear and convincing evidence that the children could not be placed with her within a reasonable time or should not be placed with her. Specifically, Jody contends that she had been compliant with CPSU's case plan and had substantially completed it. Jody asserts that she was making progress on the objectives of the case plan and that the children could have been placed with her within a reasonable time.
 {¶ 9} When "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the requisite degree of proof." Cross, supra, citations omitted. Thus, we are required to determine whether the evidence was sufficient for the trial court to make its findings by a clear and convincing degree of proof. A judgment of the trial court that is supported by clear and convincing evidence will not be disturbed. Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77.
 {¶ 10} In considering the best interests of a child, R.C. 2151.414(D) directs the trial court to consider any relevant evidence including, but not limited to, the following enumerated list of five factors:
(1) The interaction and interrelationship of the child with the child'sparents, siblings, relatives, foster parents and out-ofhome providers, andany other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child orthrough the child's guardian ad litem, with due regard for the maturityof the child;
 (3) The custodial history of the child, including whether the child hasbeen in the temporary custody of one or more public children servicesagencies * * * for twelve or more months of a consecutive twenty-twomonth period. * * *
 (4) The child's need for a legally secure permanent placement andwhether that type of placement can be achieved without a grant ofpermanent custody to the agency.
 (5) whether any of the factors in divisions (E)(7) through (11) ofR.C. 2151.414 exist.
 {¶ 11} In the case sub judice, the trial court concluded that it was in the best interest of the children for them to be placed in the permanent custody of CPSU. The trial court specifically considered the length of time the children had been in the temporary custody of CPSU, the parents' lack of sustained progress in working with caseworkers and family therapy professionals, the parents' lack of cooperation in the reunification process, and the parents' inability to complete the goals of the case plan.
 {¶ 12} In determining that the children could not or should not be placed with the parents within a reasonable time, the trial court is to consider the factors of R.C. 2151.414(E)(1) through (16), including the following:
(1) Following the placement of the child outside the child's home andnotwithstanding reasonable case planning and diligent efforts by theagency to assist the parents to remedy the problems that initially causedthe child to be placed outside the home, the parent has failedcontinuously and repeatedly to substantially remedy the conditionscausing the child to be placed outside the child's home. In determiningwhether the parents have substantially remedied those conditions, thecourt shall consider parental utilization of medical, psychiatric,psychological, and other social and rehabilitative services and materialresources that were made available to the parents for the purpose ofchanging parental conduct to allow them to resume and maintain parentalduties.
 (2) Chronic mental illness, chronic emotional illness, mentalretardation, physical disability, or chemical dependency of the parentthat is so severe that it makes the parent unable to provide an adequatepermanent home for the child at the present time and, as anticipated,within one year after the court holds the [permanent custody] hearing * **.
 {¶ 13} The trial court herein found both of these factors applicable, determining that the parents never progressed to unsupervised visits, due to CPSU's concerns for the children's safety, and failed to successfully complete their case plan. The trial court also considered the father's continued use and abuse of alcohol, commissions of acts of domestic violence by the father, and the opinion of Carol Patrick, Ph.D. that neither the father nor mother could adequately parent their children.
 {¶ 14} For the reasons that follow we are not persuaded by Jody's argument that the trial court's findings are unsupported by the record or that the court erred in granting CPSU's motion for permanent custody.
 {¶ 15} Requirements for reunification, as established by an amended case plan on February 18, 2004, ordered Jody to (1) schedule and keep all appointments indicated by psychological evaluations and follow all recommendations, (2) participate in home based therapy and parent education and follow all recommendations, (3) schedule and keep all appointments indicated by mental health assessments and follow all recommendations, and (4) enroll, attend and complete a domestic violence counseling program. Evidence was introduced, however, that Jody had not met the objectives of the case plan. CPSU introduced evidence that, although Jody initially completed a psychological evaluation, she did not address the concerns raised by the evaluator. Moreover, Jody failed to complete other components of her therapy and education.
 {¶ 16} The record reflects that Jody was to schedule therapy with Deb Dyer, a psychotherapist, but Jody did not always attend appointments. Dyer testified that Jody had been present for eight sessions, had failed to show up for two sessions and had cancelled three sessions. Dyer also testified that she referred Jody to Dr. Shawberry for medication. Dyer stated that Jody attended three appointments with Dr. Shawberry, failed to show up for one appointment and cancelled four appointments. Dyer further testified that at the time of the hearing for permanent custody, Jody had not been taking medication and had not seen Dr. Shawberry for approximately six months, since January 2004.
 {¶ 17} Mark Olthouse, the Capassos' caseworker, testified that Jody had not completed the home based therapy and parent education objective of the case plan. Olthouse stated that CPSU had provided home based therapy with two different therapists and provided a parent educator to the Capassos. Olthouse testified that both home based therapists reported there was no progress made on the goals set forth. The parent educator's report, entered into evidence, stated that services for the family were of no further benefit due to lack of improvement. Olthouse testified that neither parent had completed the objectives for home based therapy and parent education.
 {¶ 18} Nicole Heyman, a case manager with the Open Arms Domestic Violence program, testified that Jody had attended a victim support group and had completed eleven of twelve sessions. Heyman also testified that the night before the permanent custody hearing, Jody did not show up for the group session. Therefore, as of the date of the permanent custody hearing, Jody had not completed the program.
 {¶ 19} We find that, despite Jody's assertions of substantial compliance, she failed to fully complete the objectives of the case plan. Moreover, there was evidence introduced that even if the objectives were completed, Jody would not be able to adequately parent her four children. Olthouse testified that based on observations of Jody and the children, he did not feel that the children would be safe left alone with her. Carol Patrick, Ph.D., who performed the psychological evaluation of Jody, opined that Jody can not reasonably parent her children. Dr. Patrick based her opinion on Jody's low intellectual functioning, her inability to care for herself, and her failure to consistently respond to her children's needs. Dr. Patrick also testified that she did not believe any other services could be provided to Jody that would improve her parenting skills, considering her particular circumstances.
 {¶ 20} Based on the evidence of record, we find that there is sufficient evidence for the trial court to conclude, by a clear and convincing degree of proof, that the best interests of the Capasso children necessitated a grant of permanent custody to CPSU and that the children could not or should not be placed with Jody within a reasonable time. Therefore, we do not find that the trial court erred in granting permanent custody to CPSU.
 {¶ 21} Appellant's assignment of error is overruled.
 {¶ 22} Having found no error prejudicial to appellants herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments affirmed.
 Bryant and Rogers, JJ., concur.